Good morning, Senior Judge Boggs, Judge Ikuda, Judge Christian. Paul Leeds, appearing on behalf of Elizabeth Teslin and Christopher Hamilton, who are the debtors in a Chapter 11 bankruptcy. May it please the Court. This decision is about a bankruptcy court, or this case is about a bankruptcy court decision finding that certain activities of a creditor are outside the automatic stay of Section 362. The creditor, Elite, brought an action against an affiliate of the debtors, a company, a family-owned business that the debtor, Christopher Hamilton, works for. The operating agreement of that company provided certain indemnity rights to the debtor, and after confirmation of the Chapter 11 plan and in violation of the automatic stay, the creditor, Elite, filed an action in superior court against HCC, the third party, alleging that it owed indemnity rights to Hamilton under this operating agreement. And they brought it under California CCP 708.210, known as a creditor suit, which recites when a third person has position of property or debt, paraphrasing, owes a debt to the debtor, the creditor can sue that third party to have the property or the debt applied to the judgment. It is difficult to imagine an action more closely related to the rights of a debtor or the rights of a bankruptcy estate under Section 541 of the Bankruptcy Code. Any property like this that is owing to Christopher Hamilton by this third party is property of the bankruptcy estate under Section 541. The court, the district court, relied on Chugach, which you try to, in the briefs, you try to distinguish based on its facts, but it has this language saying that Section 362A does not stay actions against guarantors and sureties, among others. That's correct, Your Honor. Why aren't we bound by that? It begs the distinction between an indemnitor, a surety, and a guarantor. There's a crucial distinction here. A crucial distinction if we're talking about the common law definition of indemnification, right? Well, the actual definition of indemnification, Your Honor, I'd submit it's very important. What about the statutory definition in California? The statutory definition just talks about when a third party is liable and, in my opinion, focuses more on the nature of the liability when it arises. For example, there's indemnity for liability. Can I break that down? Forgive me, I'm interrupting you. Yes. Just to break it down, since we have a lot of cases on the calendar today. Yes. And you're a specialist in one, or I guess in two. So I looked at the statute, and the statute talks about when the duty to indemnify arises as opposed to the common law. Yes. Which is basically, in other words, I'm just trying to draw the distinction between what I'll just, for shorthand purposes, talk about the right to be reimbursed versus this right to indemnification that I think by statute arises upon liability. So just for starters, there's no question that Hamilton's liable, right? There's a state court judgment, yes? Correct. That Hamilton has a liability to his creditor. That's correct. Okay. So then now you were going to explain why that should be taken out. He is the beneficiary. Yes, Your Honor. He is the beneficiary of an indemnity obligation under this operating agreement. Could I interject a question there? Because when I looked at the language of the operating agreement, apparently the district court interpreted it. It seems the language is reasonably susceptible to the company agreed to pay the judgment obtained by elite. Because it says the company agrees to indemnify Chris Hamilton for liabilities arising out of the judgment. So is that an incorrect interpretation that the company in the HCC in the operating agreement agreed to pay the judgment? It agreed to pay Chris Hamilton should he have obligations under the judgment. But Hamilton's obligations were subject to a Chapter 11 plan. But the important part of that analysis, Your Honor, is Chris Hamilton. This distinction is very important. Assurity assures performance to a third party. A guarantor assures performance to a third party. An indemnitor provides an indemnity with a right. The California Civil Code says assurity or guarantor is one who promises to answer for the debt of another. Assurity or guarantor. That's correct. Right. And so this appears to say that the company agrees to answer for Chris Hamilton's debt. Is that wrong? That is wrong, Your Honor. It agrees to indemnify Hamilton for Hamilton's exposure or liability if he's required to pay or has liability to elite. Hamilton is the beneficiary of that obligation. So he is liable, right, because there is a judgment. At the time it was entered, there was a question as to what the scope of the liability would be in light of the Chapter 11 plan, Your Honor. But whatever liability there was, we don't dispute that HCC is liable to Hamilton to indemnify him for whatever his liability would ultimately be to elite. I think the question is there's no dispute that Hamilton is liable on the state court judgment. That's correct, Your Honor. Yes. That's what drove the Chapter 11. There's absolutely no doubt about that. So this distinction is critical because that's what makes it property of the bankruptcy estate, and the whole point of Chapter 11 is to allow a debtor to reorganize their affairs, take the property rights that are due to them, and put them into a plan to pay creditors. Such a plan was proposed. We're going to be talking about that on the next appeal. But the basic, where the bankruptcy court erred fundamentally was finding that this was outside the scope of the automatic stay. Again, it was a misinterpretation of 708.210 because the bankruptcy court effectively interpreted that as a creation of direct liability, true privity of obligation between HCC and elite, and that is just not the case. The California Supreme Court has ruled that this is a garnishment statute. This is, in effect, only exercising property or control over property that a debtor owns and applying it to pay a judgment that the debtor is obligated on to a creditor. And that's why this seems to me to be a very simple and straightforward case. The Chugash case, that had to do with a ship that was independently liable. There was a lien on the ship, and that's what the creditor grabbed. The advanced ribbon case had to do with the pledge of stock in a debtor, which was neither property of the debtor, and it was independently liable to the creditor because of the pledge. The same thing, Boucher was different because it was a different party. It was employees versus the corporation. So I believe the distinctions are important. Parties have to be able to draft contracts to respect those differences. If we start making an indemnity agreement the same as a surety or a guarantor, we have completely taken away from parties the right to control their obligations and negotiate their own destiny. Counsel, you've said that the connection with HCC here is property of the estate. Was that ever listed in any of the bankruptcy documents as being property of the estate? The indemnity obligation was disclosed. It was negotiated post-petition, so it was never included in the bankruptcy petition itself. But in October of 2015, when that specific right was negotiated, and it was negotiated in conjunction with something like the second or third attempt at an amended plan. You ended up with six, right? We did, Your Honor. Now, three of those were informal review-type status, where we changed them to satisfy what were informal discussions with creditors. Three went to a confirmation process in every case. You just said that it was disclosed. Is that the same as listing it as property? I'm not a bankruptcy expert, but I would think if you won the lottery after petition, you would be required to schedule that in some way. Is that right or not? I'm not sure it would require you to amend the petition. The petition literally is a statement of the property of the bankruptcy estate on the petition date. After acquired property, it does become property of the estate under, I think it's 1114. And so that is coming in, and that was disclosed. And there's no doubt that it was disclosed. It was disclosed in 2015. A copy of the operating agreement and the employment agreement with all the indemnity rights we're talking about were actually included in the disclosure statement. Do you want to save some time for rebuttal? I would like to, Your Honor. Thank you very much. We'll hear from the other side. Good morning.  Gerald Sims on behalf of Apelli's Elite of Los Angeles and San Diego Testing Services. Just picking up on Judge Boggs' question about whether this should have been listed, counsel made a statement that the indemnity didn't arise until much later in the case. Well, the operating agreement on its face is effective April 2 of 2014. The bankruptcy was filed April 24 of 2014. Fast-forwarding a little bit, in the spring of 2015, counsel presented a notice of intended action stating that the debtor proposed to pay attorney's fees pursuant to the indemnity obligations of HCC under both the operating agreement and the then-existing employment agreement that was also effective on April 2 of 2014. What counsel referred to is a later document that was prepared at some point in time and signed in 2015. After they'd already made these representations as to the existence of the indemnities. And in the declaration that was filed when that document was disclosed, Mrs. Diane Hamilton, Mr. Hamilton's mother, said something to the effect of, the court wanted this agreement in writing, so we put it in writing and it's attached. And it was more expansive in terms of the words, but I would submit that it didn't expand the indemnity right. So the opposing counsel's focus is to differentiate between indemnitor and a guarantor surety. And the indemnitor is liable to the indemnity to Mr. Hamilton, as opposed to having any obligation to the third party. Right. How do you respond to that? Well, I think that a similar argument was made in advance ribbon at 125 Bankruptcy Reporter at 264 and 65. And the court says, the debtor's attempts to distinguish this case from the guarantor cases is without substance. And while this is a different sort of distinction, I think it's likewise without substance. When the indemnities were executed, effective before the bankruptcy, at that point in time, the judgment had already been entered. And we hadn't gotten to the point of it being determined to be non-dischargeable, but the judgment had already been entered. And at that point in time, there was the indemnitor, HCC, put its assets at risk. It was going to pay it. So, yes, did Hamilton have a right to demand that it be paid by HCC? Yes. Did they use that in the plan? No. Did the plan say anything about causing the HCC to pay this judgment in the plan or in any fashion? No. You know, you just hit on one of my questions. Is there anything in the record to indicate that Mr. Hamilton or the Hamiltons have demanded payment? No, Your Honor. There is absolutely nothing. The only use that indemnity has been made of is to provide, at this point, for over $2 million in attorney's fees, accountancy, professional fees in the Chapter 11. But no indication that Hamilton College has refused? There's no indication that they have – well, there's no indication that Mr. Hamilton made a demand that HCC pay. And there's no indication that HCC has refused such a demand. There is litigation ongoing, and they're fighting it. But I'm not sure if I'm answering your question, Your Honor. You did, thank you. But now when you mention litigation ongoing, now you've lost me. What litigation are you referring to right now? Well, the lawsuit that we're talking about here. The state court? The state court action is ongoing. That's fine, thank you. Yes. I thought for a minute it sounded like you were talking about a third action. Well, there have been a lot of actions in this case. Yes, I just wanted to be clear. Thank you. So I think, you know, Chugach, I think, is binding. It doesn't limit. In fact, it says specific items, and then it says on any other liabilities. The rule you're taking from Chugach has to do with liability for debts of the debtor, right? Correct. Okay. Correct. And we're not seeking to do anything with respect to Mr. Hamilton's rights under the indemnity. And that's where there's counsels conflating all of these issues into one thing. And another point that I'd like to make on conflation, if you will, are these citations to the state court cases where counsel purports to argue that there's no right to sue HCC. And he takes cases out of context. The Farmers and Merchants Bank case, it was decided under a prior section, not 708-210, but 720. And under that version of 720, there were a bunch of conditions that had to be satisfied before there could be a lawsuit against the third party. And what the ruling was in that case was not that the injured party, the creditor, could never sue the third party, but instead the court reversed or sent it back to the trial court with instructions to dismiss that action against the third party without prejudice to it being refiled once, and I guess if, that creditor had obtained a judgment against the party who was the insured under that insurance contract. So after that happened, when 708-210 was amended, and it's in the legislative comment to the statute, all those preconditions were eliminated. So it's clear at this point there is no necessity whatsoever to go through the processes that were required by farmers and merchants. The other case is the Chamboon case. And I think that the quote that's in the brief from Hamilton would have one think that there is, black letter law, and the quote is, quote, That's the quote. It's at page 11 of their brief. Well, the quote was, in fact, in the case, but we had the court in Chamboon actually quoting from the 1930s version of Corpus Juris. And when you read that quote within the case, the sentence reads, As a general rule, the only party entitled to sue on such a contract is the indemnity. And it goes on. And in fact, what happened was that when the court didn't say that you could never do it. The court said you just have to have an ability to have an underlying judgment. And once you have that, then you can go ahead and sue. And, Your Honor, I may have just mixed my cases up a bit in that. But the real point on these cases is that it's not a question of whether the automatic stay should apply. Those cases go to whether HCC has a defense in the state court. If elite's not entitled to sue because of these cases, they can present that to the state court. There's no problem with that. The other point that I'd like to make, first, if Your Honors have any questions, I'm happy to respond. But I heard something very interesting when counsel talked about HCC being an affiliate of the debtors. Now, all throughout this case, Mr. Hamilton has taken great pains to distance himself from ownership of this entity. Counsel called it a family business. Well, supposedly it's his mother's business. Now, this may go more towards our next hearing than this one. But I think it's clear that what's going on here is simply another stall tactic. There's nothing in the record that supports the idea that elite is trying to get property of the estate, trying to get money from HCC, that money does not belong to Hamilton. It's not property of the estate. We're not trying to wipe out his indemnity agreement. If he wants to demand that they pay elite, sure, elite would be happy to hear that. He hasn't done it. And at this point, Your Honor, there's really no impediment to this loss. Your time has expired. Thank you. I need to correct one glaring inaccuracy of what Mr. Sims just presented to the court with respect to the existence of these indemnity rights and the notice of intended action that was circulated during April of 2015. Indeed, my office did prepare a notice of intended action to be paid our attorney's fees exercising Mr. Hamilton's indemnity rights under his employment agreement. That was later that year. The court asked us to clarify the terms to make sure it included the right to pay the fees in these cases, because the payment of attorney's fees in Chapter 11 wouldn't naturally come under the activities of a fairly standard indemnity agreement, which was his existing employment agreement. The NOIA made no reference to an operating agreement with indemnity rights, because that operating agreement did not exist either. That agreement was dated later in 2015. It was an amended version of an earlier operating agreement. I did not see this until about December of 2015. So the sort of contention that this thing existed before then is simply incorrect. That is not correct, and it's an important one. The second thing is that if you also look, there's no third-party beneficiary allowed in that operating agreement. So ELITE's contention that this thing benefits or that they can sue directly because they give this right under 708.210 to exercise indemnity rights is simply inaccurate. The language of the agreement tells us that there's no intended third-party beneficiary, so there should not be any direct right of action, and that, of course, is in the record. And I think that the issue of indemnity, Your Honor, again, we've had different interpretations of this. We'll talk more about it in the confirmation appeal. Thank you, Your Honor. The case of Hamilton and Tesselin versus ELITE 55441 is submitted.
judges: Boggs, Ikuta, Christen